IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 25-cv-3078-WJM-KAS

JESUS MORALES LOPEZ,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity as warden
of the Aurora Contract Detention Facility, *et al*.

    Respondents.

---

**ORDER GRANTING AMENDED HABEAS CORPUS PETITION**

---

Before the Court is Petitioner Jesus Morales Lopez's amended petition for habeas corpus ("Petition"). (ECF No. 31.) Respondents Juan Baltazar, Warden of Aurora Contract Detention Facility, Robert Guadian, Field Office Director of Denver Field Office of United States Immigration & Customs Enforcement ("ICE"), Todd Lyons, Acting Director of ICE, Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"), and Pamela Bondi, Attorney General of the United States (collectively, "Respondents"), filed a response (ECF No. 35), to which Morales Lopez filed a reply (ECF No. 38).

For the following reasons, the Petition is granted.

    **I.**    **FACTUAL AND PROCEDURAL HISTORY**

Morales Lopez is a citizen of Mexico. (ECF No. 25 at 8.) He originally entered the United States without inspection in 2005, after which United States Customs and Border Patrol granted him voluntary return. (*Id.*) Morales Lopez then reentered the

United States without inspection in 2006.  (*Id.*)  He has lived in Colorado since.  (ECF No. 31 at 5.)  Morales Lopez is married with four United States citizen children.  (*Id.*)  He owns a painting business and is "the sole financial provider for his children."  (*Id.*)  As for his criminal history, Respondents aver that, in 2012, Morales Lopez "was convicted twice of driving without a license and careless driving."  (ECF No. 25 at 8.)

On July 2, 2025, ICE arrested Morales Lopez and served him with a notice to appear that charged him as "an alien present in the United States who has not been admitted or paroled" pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(a)(i), codified at 8 U.S.C. § 1226(a)(6)(a)(i).  (ECF No. 31 at 20.)  DHS decided that Morales Lopez should be detained in the Aurora Contract Detention Facility in Aurora, Colorado, "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations . . . ."  (*Id.* at 24.)  Morales Lopez then sought redetermination of DHS's detention decision from an immigration judge ("IJ").

On August 14, 2025, an IJ held a bond hearing pursuant to 8 C.F.R. § 1236.  (ECF No. 31 at 28.)  Contrary to its earlier representation that Morales Lopez was as an "alien" "who has not been admitted," DHS reversed course at the bond hearing,[1] arguing that the IJ lacked jurisdiction because Morales Lopez is subject to mandatory detention as an arriving alien under INA § 235(b)(2)(A), codified at 8 U.S.C. §

---

[1] On August 20, 2025—*i.e.*, while the IJ's bond decision was on appeal to the BIA—Respondents purported to cancel their notice of custody determination document, whereby they indicated that Morales Lopez was being detained pursuant to section 1226, by slashing through it and writing the word "cancelled."  (ECF No. 31 at 75.)

Morales Lopez avers that he "did not receive proper notice of his cancelled Form."  (Id. at 11.)

2

1225(b)(2)(A).  (ECF No. 1 at 26.)  But the IJ rejected this argument, explaining that Morales Lopez "was not apprehended shortly after his entry [in August 2006], and there is no evidence that he was ever detained under section 235(b) of the INA or granted parole under 212(d)(5)(A).'"  (*Id.*)

The IJ proceeded to consider the merits of Morales Lopez's bond request.  The IJ found that Morales Lopez was "not a threat to public safety" because, while he "does have several traffic infractions over the past 25 years," "[h]e does not have a criminal conviction in the United States."  (*Id.*)  The IJ further found that Morales Lopez was not a flight risk because he

- "has resided in the United States for nineteen years";
- "is married and has four United States citizen (USC) children";
- "has a fixed address where he lives with his wife and children";
- "has stable employment as the owner of a painting company that is incorporated within the State of Colorado"; and
- "is the sole financial provider for his family."

(*Id.*)  Consequently, the IJ granted Morales Lopez bond in the amount of $7,500, which he posted the next day.  (ECF No. 31 at 28.)

DHS appealed the IJ's bond decision, which triggered the automatic stay provision contained in 8 C.F.R. § 1003.19(i)(2).  (*Id.* at 31.)  That regulation provides as follows:

> ***Automatic stay in certain cases.*** In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the

3

> immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

*Id.*  By invoking this automatic stay provision, DHS ensured that Morales Lopez would remain detained, despite posting bond.  (ECF No. 31 at 3.)

On October 1, 2025, Morales Lopez filed his original habeas corpus petition, challenging his detention on the ground that the automatic stay regulation violated federal statute and the Constitution.  (*See generally* ECF No. 1.)  Nine days later, he moved for a temporary restraining order ("TRO"), asking the Court to enjoin Respondents from conducting his individual hearing on October 15, 2025, which DHS had set on October 2, 2025—*i.e.*, only a day after he filed his original habeas petition. (ECF No. 10 at 2.)

On October 14, 2025, the Court denied Morales Lopez's first motion for a TRO. (ECF No. 13.)  The Court reasoned that, while it appeared that Respondents may have set the individual hearing in retaliation of Morales Lopez initiating this judicial proceeding, "Morales Lopez's habeas petition—which challenges only the legality of his detention—has little to no nexus to the relief he actually requests in his Motion—which concerns only the merits of his underlying immigration case."  (*Id.* at 3.)  Put differently, the Court saw no legal basis to disturb the date of the individual hearing.[2]  (*Id.*)

On October 20, 2025, Morales Lopez filed a second motion for a TRO, this time arguing that he should be immediately released "because he continued to anguish two

---

[2] On October 15, 2025, an IJ continued the individual hearing.  (ECF No. 16 at 1.)  The Court understands that the individual hearing is currently set for January 5, 2026.  (ECF No. 37 at 1.)

4

(2) months longer in conditions this District has recognized as 'more akin to incarceration than civil confinement,'" and because he was likely to show that the automatic stay regulation was unlawful.  (ECF No. 14 at 1 (citation omitted).)

On October 23, 2025, however, the Board of Immigration Appeals ("BIA") vacated the IJ's bond order. (ECF No. 18 at 17.)  In a three-paragraph, skeletal order, the BIA cited its intervening decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (BIA 2025), which "conclud[ed] Immigration Judges lack the authority to hear bond request or to grant bond to aliens who are present in the United States without admission."  (ECF No. 18 at 17.)  And in the BIA's view, Morales Lopez "is present in the United States without admission . . . ."  (*Id.*)  Accordingly, the BIA concluded that "there is no authority to grant a bond in this case."  (*Id.*)

In light of this development, the Court "querie[d] whether the BIA's decision renders this habeas action moot."  (ECF No. 21 at 1.)  Therefore, the Court directed the parties to file supplemental briefs on the mootness issue and "whether they believe it would be appropriate for the Court to grant Morales Lopez leave to amend his habeas petition in response to the recent, fundamental developments in this case."  (*Id.* at 3.)

The parties filed supplemental briefs at the Court's direction.  (ECF Nos. 25, 29.) In addition, Morales Lopez filed an unopposed motion to amend and supplement his original habeas petition.  (ECF No. 23.)  On November 14, 2025, the Court granted the unopposed motion to amend, directing Morales Lopez to file his first amended habeas petition by November 18, 2025.  (ECF No. 30.)  The Court also denied as moot Morales Lopez's original habeas petition and second TRO motion.  (*Id.*)  In the Court's view, the BIA's decision rendered those matters moot because the automatic stay regulation was

5

no longer responsible for Morales Lopez's continued detention. (*Id.*)

On November 17, 2025, Morales Lopez filed his amended habeas petition, wherein he raises three claims: (1) violation of 8 U.S.C. § 1226(a), INA § 236(a); (2) violation of the Due Process Clause of the Fifth Amendment to the United States Constitution—Substantive Due Process; and (3) violation of the Administrative Procedure Act. (ECF No. 31 at 12–14.) In support, he argues that Respondents cannot detain him pursuant to section 1225(b)(2)(A) because it applies only to immigrants "appl[ying] for admission" to the United States—not immigrants who, like him, have been present in the country for decades. (*See generally id.*) As such, Morales Lopez seeks immediate release from detention or, alternatively, immediate release pending a bond hearing. (*Id.*; *see also* ECF No. 38 (adding alternative request for a bond hearing).) That same day, the Court set an oral argument on the matter. (ECF No. 32.)

On November 20, 2025, Morales Lopez filed a third motion for a TRO, arguing that he is entitled to immediate release for the same reasons raised in his Petition. (ECF No. 33.) The next day, however, the Court denied this third TRO motion. (ECF No. 34.) The Court signaled to the parties that it "will likely conclude, as numerous other courts have, that undocumented immigrants who have resided in the country for years fall within the auspices of section 1226(a)—not section 1225(b)(2)(A)." (*Id.* at 2.) Nevertheless, the Court was not convinced at that time—based on the arguments asserted and caselaw cited by Morales Lopez—that it had the authority to order for "his immediate release, untethered to a bond hearing." (*Id.*) As a result, the Court denied the third TRO motion, while also inviting Morales Lopez to cite caselaw supporting his position that immediate release without a bond hearing is available. (*Id.* at 3 n.3.)

6

On November 28, 2025, Morales Lopez asked the immigration court for a new bond hearing in light of intervening law.  (*See* ECF No. 37 at 1 (citing *Bautista v. Santacruz*, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (certifying class of noncitizens in similar situation to Morales Lopez).)  On December 4, 2025, an IJ ruled that it lacked jurisdiction under the *Yajure Hurtado* decision.  (*Id.*)  As of the date of this Order, Morales Lopez's individual hearing is set for January 5, 2026.  (*Id.* at 1.)

On December 12, 2025, the parties jointly moved to vacate the December 18, 2025 oral argument.  (ECF No. 39.)  Therein, they asserted that, "[a]ssuming . . . that the Court will likely conclude that Petitioner's detention is properly under Section 1226(a), not Section 1225(b), the parties submit that the relief is to direct that Petitioner be provided with a bond hearing pursuant to Section 1226(a) on or before December 18, 2025.  Directing such a bond hearing in lieu of ordering immediate release is appropriate."  (*Id.* at 3–4.)

Pursuant to this joint position, the Court vacated the oral argument and directed Respondents "to provide Morales Lopez with a new bond hearing pursuant to section 1226(a) on or before December 18, 2025."  (ECF No. 40 at 2.)  The Court also directed Respondents to provide the Court with a status report as to Morales Lopez's detention within five days of the bond hearing.  (*Id.*)

On December 24, 2025, Morales Lopez filed an Emergency Motion to Enforce Court Order and for Immediate Release.  (ECF No. 42.)  He claimed that an IJ granted him bond in the amount of $10,000, that he had posted that bond, but that he nonetheless remained unlawfully detained.  (*Id.* at 1.)  That same day, Respondents filed a status report stating that Morales Lopez's release was delayed because "ICE

7

was experiencing technical difficulties with the electronic bond system." (ECF No. 43 at

3.) Respondents added:

> As to next steps, Respondents submit that at this point, the
> Court has resolved the issues presented in the amended
> habeas petition (ECF No. 31), which, as explained above,
> challenged Petitioner's detention under Section 1225(b)(2)
> without an opportunity to seek bond. Now that Petitioner
> received a bond hearing and was granted release on bond
> (which is being processed), no further proceedings [sic] are
> necessary on that amended habeas petition. Respondents
> also do not seek a more written detailed decision from the
> Court. Respondents thus submit that this case is concluded,
> unless Petitioner intends to seek to amend his habeas
> petition yet again to raise other issues, and Respondents are
> not aware of whether Petitioner intends to seek to do so.

(*Id.* at 3–4.)

On December 26, 2025, Respondents filed another status report stating that,

"[o]n the morning of December 26, 2025, ICE processed and directed Petitioner's

release, and Respondents now confirm that he has been released from custody." (ECF

No. 46 at 2.)

## II.   ANALYSIS

Morales Lopez contends that his mandatory detention "by Respondents based

on INA § 235(b)(2)(A) violates the plain language of the Immigration and Nationality

Act." (*Id.* at 2.) Accordingly, he seeks immediate release from detention or,

alternatively, immediate release pending a bond hearing. (*Id.*)

As mentioned, on December 15, 2025, the Court ordered Respondents to

provide Morales Lopez with a section 1226(a) bond hearing. (ECF No. 40.) By doing

so, the Court effectively granted Morales Lopez's amended habeas corpus petition.

(ECF No. 31.) Indeed, the Court made clear in that Order: "Like dozens of other federal

8

district courts across the country, including in this Circuit, the Court concludes that Morales Lopez's detention is properly governed by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A)." (ECF No. 40 at 1 (citing *Nava Hernandez v. Baltazar, et al.*, 2025 WL 2996643, at *4 (D. Colo. Oct. 24, 2025).) Since that Order, Morales Lopez has been released on bond. (ECF No. 46 at 2.)

Given this conclusion, that Morales Lopez has been released, and that Respondents "do not seek a more written detailed decision from the Court" (ECF No. 43 at 3), the amended petition for habeas corpus is now formally granted.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Morales Lopez's amended habeas petition is GRANTED. (ECF No. 31.)

2. Morales Lopez's Emergency MOTION to Enforce *Court Order and for Immediate Release* is DENIED AS MOOT (ECF No. 42.);

3. Morales Lopez shall have his costs in compliance with Local Rule 54.1;

4. Should Morales Lopez believe he has a good faith basis to seek attorney fees pursuant to the Equal Access to Justice Act, *see Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025), he is GRANTED leave to file a motion seeking same, along with all supporting documentation, by no later than **January 26, 2026**. Respondents shall file a response by no later than **February 9, 2026**, and Morales Lopez shall file a reply by no later than **February 17, 2026**;

5. Judgment shall enter in favor of Morales Lopez and against Respondents; and

6. The Clerk is directed to terminate this case.

9

Dated this 5th day of January, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

10